IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOSE CANDELA and MARTHA LUGO, §
§
Plaintiffs, §
§
V. §                                 No. 3:17-cv-392-M-BN
§
BANK OF AMERICA, N.A., et al., §
§
Defendants. §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference from Chief Judge Barbara M. G. Lynn. *See* Dkt. No. 21. The undersigned now issues the following findings of fact, conclusions of law, and recommendation on Defendants Bank of America, N.A. and Mortgage Electronic Registration Systems, Inc.'s ("MERS") Motion to Dismiss [Dkt. No. 7].

## Background

Plaintiffs Jose Candela and Martha Lugo purchased real property located in Grand Prairie, Dallas County, Texas, (the "Property") on November 30, 2007. *See* Dkt. No. 1-1 at 17. To finance the purchase, Plaintiffs obtained a promissory loan from SFMC, LP - DBA Service First Mortgage Company, which was secured by a Deed of Trust in favor of MERS. *See id.* at 17; Dkt. No. 7-2 at 2-3 (the "Note"), 5-13 (the "Deed of Trust"). MERS transferred the Note and Deed of Trust to BAC Home Loans

Servicing, LP, fka Countrywide Home Loans Servicing, LP, the predecessor of Defendant Bank of America, on August 20, 2010. *See* Dkt. No. 7-2 at 15-16 (the "Assignment"). The Note, Deed of Trust, and Assignment were filed in the Official Public Records of Dallas County, Texas.

On April 3, 2014, Plaintiffs and Bank of America entered a Loan Modification Agreement, which was filed in the Official Public Records of Dallas County, Texas. *See* Dkt. No. 7-2 at 18-25.

On April 9, 2016, Bank of America offered Plaintiffs another loan modification after Plaintiffs completed a trial period plan. To accept the offer, Plaintiffs were required to make the first modified payment by May 1, 2016 and to return an executed copy of the Loan Modification Agreement to Bank of America by May 9, 2016. *See* Dkt. No. 1-1 at 46-47. On June 9, 2016, Bank of America informed Plaintiffs that, although they "were approved and offered a trial period plan or permanent loan modification," they were not eligible because Bank of America "did not receive the required signed loan agreement documents by the specified deadline." Dkt. No. 17-1 at 62-63.

On September 21, 2016, Bank of America sent Notice of Acceleration of Maturity and Notice of Non-Judicial Foreclosure Sale letters to Jose Candela and Martha Lugo by certified mail, return receipt requested. *See id.* at 27-32. The Property was sold at foreclosure sale on November 1, 2016. *See id.* at 34-37.

On December 28, 2016, Bank of America filed a forcible detainer action against Plaintiffs. *See* Dkt. No. 1-1 at 65-71.

On January 11, 2017, Plaintiffs filed this lawsuit suit in the 17th Judicial Court

of Dallas County, Texas, to prevent eviction from the Property. Plaintiffs also sued Bank of America, MERS, and others for wrongful foreclosure, common law fraud, breach of contract, and violations of 12 C.F.R. § 1024, 12 U.S.C. § 2605(f), and the Texas Debt Collection Act. *See* Dkt. No. 1-1 at 14-66.

In their state court petition, Plaintiffs allege that they timely made all mortgage loan payments until approximately 2014, when they experienced financial hardship as a result of Mr. Candela's illness, lost vision, and resulting disability. At that time, they contacted Bank of America, the loan servicer, regarding a resolution to the delinquent mortgage loan.

Plaintiffs further allege that they entered a trial payment agreement with Bank of America and timely made payments for January, February, and March 2016. After making all necessary payments, Bank of America approved Plaintiffs for a loan modification. The first payment under the loan modification agreement was due by May 1, 2016 and Plaintiffs were required to return the loan modification paperwork to Bank of America by May 9, 2016. *See id.* at 46-47. Plaintiffs contend that they timely made the first payment and sent all required documentation, including an executed loan modification agreement, to Bank of America. Plaintiffs attach a copy of the loan modification agreement, executed by both of them on May 5, 2016, to their petition. *See id.* at 49-55.

Plaintiffs further allege that, in mid-June 2016, Ms. Lugo followed up with Bank of America to confirm receipt of the executed loan modification documents. She was informed that Bank of America had lost them, which jeopardized approval of the loan

modification agreement. On June 23, 2016, Plaintiffs resent the loan documents to Bank of America, *see id.* at 57, but Bank of America refused to accept the documents because they were not received by the May 9, 2016 deadline.

Plaintiffs further allege that Bank of American then requested that Plaintiffs apply for a new loan modification. On October 19, 2016, Bank of America representative Jennifer Jones requested documents concerning the new loan modification application and Plaintiffs submitted a new loan modification application. *See id.* at 59-63. Ms. Lugo was repeatedly told by Bank of America representatives that Plaintiffs' requests for another loan modification or other mortgage relief assistance options would be thoroughly reviewed and considered.

Plaintiffs further allege that they did not receive any notice of default and opportunity to cure or notice of the foreclosure sale set for November 1, 2016. Instead, they received correspondence on October 31, 2016 from Bank of America stating that it was reviewing their modification request and correspondence on November 8, 2016 that Bank of America had received all of the loan modification documentation. On November 22, 2016, Bank of America representative Donna Obcamp confirmed that Plaintiffs' modification request was still under review.

Plaintiffs further allege that they were unaware of the foreclosure proceeding until late December, when they received a demand for possession and three-day notice to vacate the Property and notice of the forcible detainer action filed by Bank of America on December 28, 2016. *See id.* at 65-66.

Bank of America and MERS (collectively, the "Moving Defendants") removed the

lawsuit to this Court. *See* Dkt. No. 1.

Bank of America and MERS also filed a motion to dismiss all of Plaintiffs' claims against them under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 7. Plaintiffs filed a response, *see* Dkt. No. 15, and Bank of America and MERS filed a reply, *see* Dkt. No. 17.

The undersigned now concludes that the Motion to Dismiss Plaintiffs' Complaint [Dkt. No. 7] should be granted in part and denied in part.

## Legal Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting

*Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint

for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources

courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion" – although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties." *Turnage v. McConnell Techns., Inc.*, 671 F. App'x 307, 309 (5th Cir. Dec. 12, 2016). The Fifth Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Id.* (internal quotation marks and citations omitted).

## Analysis

I.    <u>Plaintiffs' claims against MERS should be dismissed.</u>

The Moving Defendants contend that all of Plaintiffs' claims against MERS should be dismissed because Plaintiffs do not make any specific allegations against MERS. The sole allegation against MERS is that, on or about September 30, 2011, MERS executed the Assignment "without ever providing any written notice to Plaintiff." Dkt. No. 1-1 at 17-18.

Plaintiffs agree that they have not asserted any claims against MERS and acknowledge that their claims all focus on the acts, conduct, or omissions of Bank of America, who was servicing the loan on behalf of the assignee. *See* Dkt. No. 15 at 2-3.

Plaintiffs further "agree to dismiss MERS as a party to this suit." *Id.*

Because Plaintiffs concede that they have failed to state a claim against MERS and offer to dismiss MERS from this case, the undersigned concludes that all of Plaintiffs' claims against MERS should be dismissed without prejudice.

II.   <u>Plaintiff's wrongful foreclosure claim should be dismissed.</u>

Plaintiffs sue Bank of America for wrongful foreclosure and demand for accounting of foreclosure sales proceeds. *See* Dkt. No. 1-1 at 22-24. Plaintiffs allege that the foreclosure was wrongful because they did not receive a notice of default and opportunity to cure or a notice of the foreclosure sale set for November 1, 2016.

"Federal courts applying Texas law have consistently held that the Property Code requires that a debtor be served with two notices prior to foreclosure: a notice of default and a notice of sale." *Minella v. Bank of Am., N.A.*, No. SA-14-CV-174-XR, 2014 WL 1330554, at *4 (W.D. Tex. Apr. 1, 2014) (citing *Rodriguez v. Ocwen Loan Servicing, LLC*, 306 F. App'x 854, 855-56 (5th Cir. 2009) (per curiam); *Rodriguez v. U.S. Bank, N.A.*, No. SA-12-CV-345-XR, 2013 WL 3146844 (W.D. Tex. June 18, 2013)). Both notices must be served by certified mail. *See* TEX. PROP. CODE §§ 51.002(b)(3), 51.002(d). "Service by certified mail is complete 'when the notice is deposited in the United States mail'; receipt of the notice by the debtor is not required." *Rodriguez*, 2013 WL 3146844, at *8 (quoting TEX. PROP. CODE § 51.002(e)).

The Affidavit of Kyle Hausmann attached to the recorded Substitute Trustee's Deed states that all required notices were served on Plaintiff by certified mail at her last known address. *See* Dkt. No. 7-2 at 36. "'The affidavit of a person knowledgeable

of the fact to the effect that service was completed is *prima facie* evidence of service.'" *Gossett v. Fed. Home Loan Mortg. Corp.*, 919 F. Supp. 2d 852, 860 (S.D. Tex. 2013) (quoting TEX. PROP. CODE § 51.002(e)).

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, or unfairness in the conduct of a foreclosure sale. *See In re Keener*, 268 B. R. 912, 921 (Bankr. N.D. Tex. 2001) "Under Texas common law, a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, NA*, No. 3:11-cv-972-M, 2011 WL 37920, at *2 (N.D. Tex. Aug. 1, 2011) (citing *Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975)). "The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Pollett v. Aurora Loan Servs.*, 455 F. App'x 413, 415 (5th Cir. 2011); *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. – Corpus Christi 2008, no pet.). "A claim for 'wrongful foreclosure' is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Serv., LP*, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011).

Bank of America contends that Plaintiffs cannot show that the property was sold for a grossly inadequate price. "[A] grossly inadequate sales price would have to be so little as 'to shock a correct mind, and thereby raise a presumption that fraud attended the purchase.'" *Fed. Deposit Ins. Co. v. Blanton*, 918 F.2d 524, 531 (5th Cir. 1990)

(quoting *Richardson v. Kent*, 47 S.W.2d 420, 425 (Tex. Civ. App. – Dallas 1932, no writ). "The weight of Texas authority rejects a determination of gross inadequacy where ... the property sells for over 60% of fair market value." *Id.* Even though the Fifth Circuit does not promote mechanical application of a "60% test," it has concluded that "[c]ases with a finding of gross inadequacy typically fall far below the 60% line." *Id.* at 532 n.7.

Here, the assessed value of the Property for the year 2016 was $104,205, and the property was sold at a Substitute Trustee's sale on November 1, 2016 for $119,070. *See* Dkt. No. 7-2 at 34-47 (Substitute Trustee's Deed), 39-41 (appraisal district report). Thus, based on these figures the property was sold for 114% of its fair market value, which exceeds the 60% threshold for a finding of gross inadequacy. *See, e.g., Warren v. Bank of America, N.A.*, No. 3:16-cv-1373-M-BN, 2016 WL 8346565, at *6 (N.D. Tex. Aug. 19, 2016).

Plaintiffs dispute use of the Appraisal District's valuation of the property in determining fair market value, citing *Religious of Sacred Heart of Tex. v. City of Houston*, 836 S.W.2d 606, 615-17 & n.4 (Tex. 1992) (determining fair market value for condemned property), but they do not provide any other basis to value the property or to show that the Appraisal District's valuation was inaccurate or inadequate, and, "as a matter of public record, the Court may take it into consideration in assessing the plausibility of [Plaintiffs'] claim." *Searcy v. Wells Fargo Home Mortg.*, No. 3:14-cv-3411-B, 2015 WL 1182836, at *3 n.1 (N.D. Tex. Mar. 16, 2015).

The undersigned concludes that Plaintiffs have failed to plead sufficient facts

to show that the Property was sold at a grossly inadequate price, and, because they have not suggested a basis on which they could do so, their wrongful foreclosure claim against Bank of America with prejudice.

III.  Plaintiffs' common law fraud claim should not be dismissed.

Bank of America contends that Plaintiffs' fraud claim should be dismissed because it is barred by the economic loss doctrine and because Plaintiffs have failed to sufficiently plead all elements of common law fraud.

First, Bank of America argues that Plaintiff's fraud claim – based on the allegedly false representations that Plaintiffs could obtain a loan modification in 2016 – is barred by the economic loss rule. Bank of America contends that Plaintiffs base their fraud claim on Bank of America's alleged actions with respect to the Note, Deed of Trust, and loan modification agreement and that all of Plaintiffs' fraud allegations are dependent on the existence of a contract. *See* Dkt. No. 7 at 10-11 of 18.

According to Plaintiffs, their fraud claim is based on Bank of America's "acts, conduct or omissions of initially agreeing to offer Plaintiffs a loan modification in January 2016, accepting three trial period payments from Plaintiffs in January, February and March 2016 pursuant to that agreement, and then subsequently refusing to follow through and provide the final modification paperwork to the Plaintiffs, and instead forcing Plaintiffs to re-apply several more times until the foreclosure sale was completed without any notice to the Plaintiffs." Dkt. No. 15 at 7-8. Plaintiffs assert that, as a matter of law, fraud claims are not barred by the economic loss rule and that their fraud claim is not based on "performance or non-performance of a contract term"

but on the intentional misrepresentation of material facts regarding the status of a loan modification. *See id.* at 8.

Under Texas law, if a tort claim arises solely from the parties' contractual relationship, the tort claim is not allowed. *See DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625-26 (N.D. Tex. 2011). Thus, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991)). "That is, 'a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim.'" *McDaniel v. JPMorgan Chase Bank, N.A.,* No. 1:12-cv-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012) (quoting *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App. – Houston [1st Dist.] 2007, pet. denied)). "Thus, the rule restricts contracting parties to contractual remedies for economic losses associated with their relationship, 'even when the breach might be reasonably viewed as a consequence of a contracting party's negligence.'" *Id.* (quoting *Lamar Homes, Inc.*, 242 S.W.3d at 13). "The focus of the rule is on determining whether the injury is to the subject of the contract itself." *Id.* (internal quotation marks omitted).

"In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: (1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and (2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C.*

*Penney Corp., Inc.*, No. 3:05-cv-2499-L, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45-47 (Tex. 1998)); *see also DeLanney*, 809 S.W.2d at 494-95. Plaintiffs bear the burden to establish evidence of an independent injury. *See McDaniel*, 2012 WL 6114944, at *7 (citing *Esty v. Beal*, 298 S.W.3d 298, 302 (Tex. App. – Dallas 2009, no pet.)).

Despite the nonexistence under Texas law of a duty between a mortgage servicer and borrower, or between a lender and borrower, Texas courts have held that there is always a duty to correct one's own prior false or misleading statement. *See Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (citations omitted). Likewise, the Texas Supreme Court has approved a claim that a "bank has a duty to use reasonable care whenever it provides information to its customers or potential customers." *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Plaintiffs' fraud claim, as pleaded, is based on Bank of America's alleged failure to provide correct information about the status of Plaintiffs' loan modification application in 2016. Plaintiffs allege that they complied with all of Bank of America's requirements to obtain a loan modification, including timely returning an executed copy of the loan modification agreement to Bank of America but that Bank of America claimed to have lost the paperwork, refused to accept a copy demonstrating timely compliance, and instead convinced Plaintiffs to apply for yet another loan modification and mislead them with false assurances that their application was under review while

-14-

it was laying the groundwork to and ultimately foreclosing on the property without providing Plaintiffs with the required notice of default and opportunity to cure. Plaintiffs also seek exemplary damages.

As pleaded, Plaintiffs' fraud claim sounds in tort, not contract. And, "'[a]s a matter of law, the economic loss rule does not apply to [such] fraud claims because the parties to a contract have an independent duty not to commit the intentional tort of fraud.'" *Davis v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 870, 883 (S.D. Tex. 2013) (quoting *Barcenas v. Fed. Home Loan Mortg. Corp.*, No. H-12-2466, 2013 WL 286250, at *7 (S.D. Tex. Jan. 24, 2013)).

Second, Bank of America argues that Plaintiff failed to plead all of the elements of common law fraud. Under Texas law, the elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *See Shandong Yinguang Chem. Indus. Jt. Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

Fraud is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement, which requires plaintiffs who allege fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To comply with Rule 9(b), the plaintiff must "specify the statements contended to be

fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

Bank of America contends that Plaintiffs fail to plead the requisite who, what, when, where and how. While other portions of Plaintiffs' petition may be vague, their allegations concerning the 2016 loan modification process are sufficiently detailed to meet Rule 9(b)'s heightened pleading requirements.

Accordingly, the undersigned concludes that Plaintiffs' fraud claim should not be dismissed.

IV.    <u>Plaintiffs' breach of contract claim should be dismissed in part.</u>

Bank of America asserts that Plaintiffs fail to state a breach of contract claim. In Texas, "[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal quotation marks omitted).

Bank of America asserts that Plaintiffs cannot establish substantial performance under the Note and Deed of Trust because they cannot allege that they fulfilled their contractual obligations by remaining current on their monthly payments. Plaintiffs admit that they were in default when they sought loan modifications in 2014 and 2016. *See* Dkt. No. 1-1 at 18. "It is well established that a party to a contract who is himself in default cannot maintain a suit for its breach." *Dobbins v. Redden*, 785

S.W.2d 377, 378 (Tex. 1990) (quotation and citations omitted); *accord Mahmoud v. De Moss Owners Ass'n, Inc.*, 865 F.3d 322, 328 (5th Cir. 2017) ("Under Texas law, it is a 'strict' and 'well established rule' that 'a party to a contract who is himself in default cannot maintain a suit for its breach.'" (quoting *Dobbins*, 785 S.W.2d at 378)).

Bank of America also argues that it complied with all statutory notice requirements. Plaintiffs allege that Bank of America breached the Deed of Trust by failing to provide them with notice of default or an opportunity to cure as required by the Deed of Trust and the Property Code *See* Dkt. No. 1-1 at 24-25. As discussed above, the Court can take judicial notice that Plaintiffs were properly served with the notices required by the Texas Property Code. *See* TEX. PROP. CODE §§ 51.002(b)(3), 51.002(d).

Plaintiffs respond that Bank of America is focusing on the wrong contract and that their breach of contract claim is based on the 2016 loan modification agreement. Plaintiffs allege that they timely performed under the 2016 loan modification agreement and contend that their loan was modified on May 5, 2016, when they executed the loan modification agreement and returned it to Bank of America. *See* Dkt. No. 1-1 at 1.

In reply, Bank of America argues that there is no 2016 loan modification agreement and that any claim it breached a proposed loan modification agreement would be barred by the statute of frauds. *See* TEX. BUS. & COM. CODE § 26.02. To support of its reply, Bank of America attaches a June 9, 2016 letter in which it informs Plaintiffs that, although "[y]ou were approved and offered a trial period plan or permanent loan modification .... we regret to inform you that you are not eligible" for

a loan modification because "[w]e did not receive the required signed loan agreement documents by the specified deadline." Dkt. No. 17-1 at 62-63.

But the Court cannot consider the denial letter for purposes of a Rule 12(b)(6) motion to dismiss. The denial letter is not mentioned in Plaintiff's petition. It is attached to Bank of America's reply not its motion to dismiss. And it is not central to Plaintiffs' claims but, instead, is a piece of evidence that Bank of America uses to dispute Plaintiffs' claims.

Accordingly, taking Plaintiffs' allegations as true, as the Court must to decide a motion to dismiss, the undersigned concludes that Plaintiffs have stated a claim for breach of the 2016 loan modification agreement. Plaintiffs' breach of contract claims based on the Note and Deed of Trust should be dismissed, but the claims based on the 2016 loan modification agreement should not be dismissed.

V.    <u>Plaintiffs' claim for violation of 12 C.F.R. § 1024.41 should not be dismissed.</u>

Bank of America asserts that Plaintiffs fail to state a claim for violation of 12 C.F.R. § 1024.41. Section 1024.41 applies in cases where "a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale" and requires the servicer "within 30 days of receiving a borrower's complete loss mitigation application ... to evaluate the borrower for all loss mitigation options available to the borrower; and provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer the borrower." 12 C.F.R. 1024.41(c)(1).

Plaintiffs allege that Bank of America failed, neglected, or refused to respond to

their numerous and repeated requests for a loan modification or any loss mitigation options available to them prior to the foreclosure sale, in violation of 12 C.F.R. § 1024.41(f)(2)(i). *See* Dkt. No. 1-1 at 25-26. That section provides that a servicer cannot file for judicial or non-judicial foreclosure while the borrower's complete loss mitigation application is under review. Section 1024.41 can be enforced under Section 2605(f) of the Real Estate Settlement Procedures Act. *See* 12 U.S.C. § 2605(f).

Bank of America argues that it offered Plaintiffs a loan modification proposal on April 9, 2016 but that Plaintiffs failed to comply with the terms for acceptance by returning the executed agreement by May 9, 2016. Bank of America further argues that the facsimile report attached to Plaintiffs' petition proves that Plaintiffs did not return the proposed loan modification agreement until June 23, 2016. Bank of America argues that the timeline in Plaintiff's petition demonstrates that they did not properly and timely return the executed copy to Bank of America.

Bank of America also argues that Plaintiffs had not submitted a complete mitigation package more than 37 days before the scheduled foreclosure because an exhibit to Plaintiffs' petition demonstrates that, as of October 19,2016, Bank of America informed Plaintiffs that additional documents were necessary in order to review their loan modification application.

But Bank of America's arguments ignore Plaintiffs' allegations that they timely executed and returned the loan modification agreement to Bank of America on May 5, 2016; that they learned for the first-time in a mid-June telephone call that Bank of America had lost their application; and that they resent the application to Bank of

America on June 23, 2016. Plaintiffs further allege that Bank of America thereafter misrepresented to Plaintiffs that their pending application was incomplete.

Taking Plaintiffs' allegations as true, the undersigned concludes that Plaintiffs have stated a claim for violation of 12 C.F.R. 1024.41.

VI.     Plaintiffs' Texas Debt Collection Practices Act claim should be dismissed.

Plaintiffs allege that Bank of America violated the Texas Debt Collection Practices Act ("TDCPA") by misrepresenting the character, amount, or extent of the debt to be collected. *See* TEX. FIN. CODE § 392.304(a)(8). The TDCPA claim is based on Plaintiffs' allegations that Bank of America failed to provide Plaintiffs with the required notice of default and opportunity to cure and instead accelerated the loan maturity and posted the Property for foreclosure sale.

Bank of America asserts that Plaintiffs have failed to state a claim because it is not a debt collector and Plaintiffs do not and cannot allege facts to show a causal link between an alleged violation of the TDCPA and any alleged injury. Plaintiffs offer no response to these arguments.

Even though mortgage servicers are "debt collectors" under the TDCPA, *see Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 932 (N.D. Tex. 2014), Plaintiffs have failed to state a claim for violation of the TDCPA. As discussed above, the Court takes judicial notice that Bank of America provided Plaintiffs with all of the required statutory notices. And Plaintiffs do not set forth any other facts to suggest misrepresentations related to the "character, extent, or amount" of their debt.

To withstand a motion to dismiss, the Court must be able to discern not only

that there was a misrepresentation but also how the defendant allegedly misrepresented the character, extent, or amount of the plaintiff's debt. *See id.* at 934. Because Plaintiffs have failed to do so, their TDCPA claim should be dismissed without prejudice.

V.     Plaintiffs' request for injunctive relief should not be dismissed.

Plaintiffs seek injunctive relief in the form of a temporary restraining order and temporary injunction preventing Bank of America from foreclosing on the Property. *See* Dkt. No. 1-1 at 16, 28-29. A request for injunctive relief under Texas law is not itself a cause of action but instead necessarily depends on an underlying cause of action. *See Wildy v. Wells Fargo Bank, NA,* No. 3:12-cv-1831-BF, 2013 WL 246860, at *6 (N.D. Tex. Jan. 21, 2013). Bank of America asserts that, "[w]ithout a substantive claim on which to base their request for injunctive relief, their request for an injunction fails as a matter of law." Dkt. No. 17 at 7; *see also* Dkt. No. 7 at 16-17 of 18. Because the undersigned concludes that some of the claims should survive dismissal, this argument necessarily fails.

## Recommendation

Defendants Bank of America, N.A. and Mortgage Electronic Registration System, Inc.'s Motion to Dismiss [Dkt. No. 7] should be granted in part and denied in part. All of Plaintiffs Jose Candela and Martha Lugo's claims against MERS should be dismissed without prejudice, and Plaintiffs' claim against Defendant Bank of America, N.A. for wrongful foreclosure and for breach of contract claims against Defendant Bank of America, N.A. based on the Note and Deed of Trust should be dismissed with

prejudice Plaintiffs' claims against Defendant Bank of America, N.A. for breach of contract claim based on the 2016 loan modification agreement and for violation of 12 C.F.R. § 1204.41 and Plaintiffs' request for injunctive relief, to the extent they are based on those claims, also should not be dismissed. Plaintiffs' claim against Defendant Bank of America, N.A. for violation of the Texas Debt Collection Practices Act should be dismissed without prejudice.

The Court should grant Plaintiffs Jose Candela and Martha Lugo 21 days from the date of any order adopting these Findings, Conclusions, and Recommendation in which to file an amended complaint to replead their claim against Defendant Bank of America, N.A. for violation of the Texas Debt Collection Practices Act consistent with this recommendation and the conclusions and findings above and should order that, if they fail to do so, their claim for violation of the Texas Debt Collection Practices Act will be dismissed with prejudice without further notice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 7, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE